## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

| | | |
|---|---|---|
| **WENDELL LEONARD CRUSE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action Nos. 3:17-00485** |
| **v.** | ) | |
| | ) | |
| **ERNIE BLACKBURN, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants Blackburn and Matovich's Motion for Summary Judgment (Document No. 49), filed on August 2, 2017. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 54.) Plaintiff filed his Response in Opposition on December 27, 2017 (Document No. 75) and Defendants filed their Reply (Document No. 76). Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion for Summary Judgment should be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 2017, Plaintiff, acting *pro se* and a pretrial detainee in confinement at Western Regional Jail in Barboursville, West Virginia, filed his letter-form Complaint claiming

1

entitlement to relief under 42 U.S.C. §1983.[1] (Document No. 2.) As defendants, Plaintiff named

the following: (1) Ernie Blackburn, Huntington Police Officer; and (2) Paul Matovich,

Huntington Police Officer. (Id.) Plaintiff alleges that Defendants Blackburn and Matovich were

conducting surveillance of Plaintiff's residence on December 29, 2016, and conducted an

improper traffic stop of a vehicle that left Plaintiff's residence. (Id.) Plaintiff states that

Defendants Blackburn and Matovich had "no probable cause for the traffic stop and conducted

an illegal and improper search of the vehicle and an improper and illegal detainment of the

vehicles occupants." (Id.) Plaintiff alleges that Defendants Blackburn and Matovich searched his

home on the same day after securing a search warrant obtained by the use of a "false affidavit"

and "unsubstantiated accusations." (Id.) Plaintiff states that "Defendants conducted a thorough

and extensive search of Plaintiff's residence, but "no narcotics or illegal substances of any kind"

were found in his residence. (Id.) Plaintiff, however, states that he was arrested based upon an

"outstanding traffic warrant." (Id.) Following his arrest, Plaintiff states that Defendants

Blackburn and Matovich transported Plaintiff to the Huntington Police Department where he was

placed in an interview room and read his Miranda rights. (Id.) Plaintiff alleges that Defendants

Blackburn and Matovich then acknowledged that no drugs were found in Plaintiff's residence or

on Plaintiff's person, but stated that "a small amount of suspected crack cocaine was found on

Lisa, who was an occupant at Plaintiff's residence." (Id.) Plaintiff contends that Defendants

Blackburn and Matovich stated that "if Plaintiff did not cooperate with Defendants investigation,

the narcotics found on Lisa would be attributed to Plaintiff and Plaintiff would be charged, and

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a
less stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Lisa would not be charged, with narcotics found secreted on her person." (Id.) Plaintiff alleges that he "vehemently protested that he did not have anything to do with 'Lisa' and that the drugs found secreted on her person could not be legally attributed to Plaintiff." (Id.) Plaintiff contends that Defendants Blackburn and Matovich "then knowingly, maliciously and feloniously filed false charges against the Plaintiff upon their oath and affirmation stating they found 'a bag containing tan chucks that field tested positive for cocaine' in Plaintiff's residence." (Id.) Plaintiff argues "Defendants knew the Complaint they swore to and affirmed was totally and absolutely untrue." (Id.) Plaintiff states that Magistrate Black dismissed the charges during a preliminary hearing conducted on January 6, 2017, after verifying that no drugs were found on Plaintiff's person or in his residence. (Id.) Plaintiff contends that the actions by Defendant Blackburn and Matovich caused Plaintiff to be "illegally incarcerated for 11 days, caused severe emotional distress and mental anguish, and loss of property." (Id.) As relief, Plaintiff requests monetary damages. (Id.)

By Order entered on January 24, 2017, United States Magistrate Judge Cheryl A. Eifert granted Plaintiff's Motion to Proceed Without Prepayment of Fees, directed the Clerk to issue a summons for each named defendant, directed the United States Marshals Service to serve the Summons and a copy of Plaintiff's Complaint upon each Defendant. (Document No. 4.) On February 28, 2017, Defendants Blackburn and Matovich filed their Answer. (Document No. 9.) On the same day, the above civil action was transferred from Judge Eifert to the undersigned for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (Document No. 10.) By Scheduling Order entered on March 1, 2017, the undersigned set forth deadlines for the completion of discovery and the filing of dispositive

motions. (Document No. 11.)

On March 13, 2017, Plaintiff filed a Motion to Amend Complaint to include "two new defendants and two new counts." (Document No. 12.) Plaintiff attached a copy of his "Amended Complaint" as an Exhibit. (Document No. 12-1.) By Order entered on March 30, 2017, the undersigned granted Plaintiff's Motion to Amend, directed the Clerk to file Plaintiff's Amended Complaint, and directed that Plaintiff's Amended Complaint be served upon Defendants. (Document No. 14.) In his Amended Complaint, Plaintiff named the following as additional defendants: (1) Sean Hammers, Cabell County Prosecutor; and (2) Sharon Frazier, Cabell County Assistant Prosecutor. (Document No. 15.) As additional "counts," Plaintiff asserted claims of "malicious prosecution and abuse of process" and retaliation. (Id.) In support, Plaintiff asserts that Defendants Hammers and Frazier "appeared before a Cabell County West Virginia Grand Jury and sought an indictment against the Plaintiff based solely upon the perjured testimony and false affidavit filed 12-29-16" in retaliation for Plaintiff's instant civil right action." (Id.)

On April 21, 2017, Defendants Blackburn and Matovich filed their Answer. (Document No. 23.) On May 4, 2017, Defendants Hammer and Frazier filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 28 and 29.) Plaintiff filed his Response in Opposition to Defendants Hammer and Frazier's Motion to Dismiss on June 23, 2017. (Document No. 42.) On August 3, 2017, all Defendants filed Motions for Summary Judgment and Memorandums in Support. (Document No. 49, 52, 53, and 55.) Defendants Blackburn and Matovich argue that Plaintiff's federal claims should be dismissed because Defendants are entitled to qualified immunity. (Document No. 55, pp. 4 – 8.) Defendants Blackburn and Matovich then contend that

4

Plaintiff's "remaining claims should be dismissed, without prejudice, because they purportedly arise solely under State law." (Id., pp. 8 – 10.)

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 4, 2017, advising him of the right to file a response to the Defendants' Motions for Summary Judgment. (Document No. 54.) On August 31, 2017, a Voluntary Order of Dismissal was entered regarding Defendants Frazier and Hammer. (Document No. 62.) On December 27, 2017, Plaintiff filed his Response in Opposition to Defendants Blackburn and Matovich's Motion for Summary Judgment. (Document No. 75.) Defendants Blackburn and Matovich filed their Reply on January 3, 2018. (Document No. 76.) In support, Defendants Blackburn and Matovich attached the following Exhibits: (1) A copy of Plaintiff's Complaint (Document No. 76-1.); (2) A copy of Courtney Bohnke's statement (Document No. 76-2.); and (3) A copy of the transcripts from Plaintiff's plea hearing in Case Nos. 17-F-016 and 15-F-236 (Document No. 76-3.).

## **STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at

587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

## 1.    **Federal Constitutional Claims:**

In his Complaint and Amended Complaint, Plaintiff alleges that Defendants Blackburn and Matovich conducted an improper search and subjected him to false arrest, false imprisonment, and malicious prosecution in violation of his Fourth Amendment rights.

(Document Nos. 2 and 15.) In their Motion, Defendants Blackburn and Matovich (hereinafter "Defendants") argue that Plaintiff's claim for unconstitutional search and seizure must be dismissed based on qualified immunity. (Document No. 55, pp. 4 – 8.) Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 *4th Cir. 2013)(internal quotation marks and citations omitted).

   In the instant case, Defendants appear to acknowledge that the Fourth Amendment right

to unreasonable search and seizure was clearly established at the time of the allegation violation. Defendants, however, argue that they are entitled to qualified immunity because Plaintiff cannot establish that Defendants violated his constitutional rights.

**(a)    Unlawful Search:**

Plaintiff first alleges that he was subjected to an unreasonable search in violation of his Fourth Amendment rights because the search warrant authorizing the search of his home was not supported by probable cause. (Document No. 2.) Specifically, Plaintiff asserts that the search warrant was unsupported by probable cause because it was secured by the use of a "false affidavit" and "unsubstantiated accusations." (Id.) In their Motion for Summary Judgment and Reply, Defendants argue that the search was appropriate and they are entitled to qualified immunity. (Document Nos. 49 and 76.) Defendants attach as Exhibits a copy of the "Affidavit and Complaint for Search Warrant," the "Search Warrant," and the Statement of Courtney Bohnke. (Document Nos. 49-2 and 76-2.)

The undisputed evidence reveals that Defendant Matovich prepared and submitted an "Affidavit and Complaint for Search Warrant" to the Magistrate of Cabell County on December 29, 2016. (Document No. 49-2.) In support of his Complaint for Search Warrant, Defendant Matovich's Affidavit sets forth the following as probable cause:

> On 12/26/2016, Members of the Huntington Police Department's Special Emphasis Unit spoke with a Cabell County Sheriff's Deputy who stated there was drug activity at the address provided. The Deputy stated that there was lots of foot traffic at the residence and that he had spoken to several neighbors in the area. Officers have also received three separate Tip Line phone calls within the last several weeks in regards to drug activity at the residence provided.
>
> On 12/29/16, Officers were conducting surveillance of the residence. Officers observed a vehicle leave the residence and drive approximately 2 blocks. Officers stopped behind the vehicle and started a conversation with the occupants. One of

the occupants provided a verbal/written statement in which they had purchased "Crack" Cocaine from "T-Money at 222 1st Street Altizer. The individual provided the substance with the narcotic. The substance field tested positive for Cocaine by SGT Ernie Blackburn.

Based on the above information, Officers believe that narcotics are being sold and stored at the residence.

(Document No. 49-2, p. 10.) The Magistrate determined probable cause existed based upon the foregoing and issued a Search Warrant for Plaintiff's residence. (Id., p. 2.)

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" Messerschmidt v. Millender, 565 U.S. 535, 546, 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012)(citing United States v. Leon, 468 U.S. 897, 922-923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The issuance of a warrant by a neutral magistrate, however, does not end the inquiry into objective reasonableness. Id. An exception exists when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The "shield of immunity" conferred by the warrant is lost where the warrant was "based on an affidavit so lacking in indicia of probable cuase as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Supreme Court has recognized that the "threshold for establishing this exception is a high one." Messerschmidt, 565 U.S. at 547, 132 S.Ct. at 1245. The Supreme Court has explained that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable

cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." Id.(citing Leon, 468 U.S. at 921, 104 S.Ct. 3405)(internal quotations omitted); also see Malley, 475 U.S. at 346, n. 9, 106 S.Ct. 1092("It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable.") Qualified immunity provides officers with "breathing room to make reasonable but mistaken judgments." Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011)(qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.") An officer's judgment that a warrant was supported by probable cause may be mistaken, but not "plainly incompetent." Messerschmidt, 565 U.S. at 553, 132 S.Ct. at 1249.

In the instant case, Plaintiff argues that there was a lack of probable cause because Defendant Matovich's Affidavit contained "unsubstantiated accusations" and made "false" statements because "[t]here was no drug activity occurring at Plaintiff's residence as alleged by the Defendants and Defendants have provided no credible evidence of any alleged drug activity." (Document No. 75, p. 2.) A party challenging the veracity of a warrant application must show that the officer(s) deliberately or with a "reckless disregard for the truth" made material false statements in the warrant application or omitted "material facts with the intent to make, or with reckless disregard of whether they thereby made, the [warrant application] misleading." Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). A plaintiff must further demonstrate that the false statement or

omission is material, "that is, 'necessary to the [neutral and disinterested magistrate's] finding of probable cause.'" Miller v. Prince George's County, 475 F.3d 621, 628 (4th Cir. 2007). Probable cause for a search warrant "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in the place to be searched." United States v. Richardson, 607 F.3d 357, 369 (4th Cir. 2010), cert. denied, 562 U.S. 982, 131 S.Ct. 427, 178 L.Ed.2d 324 (2010). Probable cause is determined by a "totality-of-the-circumstances" approach. Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[A] judicial officer issuing a search warrant must simply make a practical, commonsense determination – based on the totality of the circumstances revealed in the affidavit – of whether there is a substantial likelihood that evidence of a crime will be found in a particular place." United States v. Allen, 631 F.3d 164, 173 (4th Cir. 2011).

In the instant case, Plaintiff's allegations do not establish the foregoing. Although Plaintiff concludes that there was a lack of probable cause to search his residence because there was no evidence proving drug activity, the undersigned notes that a finding of probable cause only requires the totality of the circumstances show a substantial likelihood that evidence of drug activity would be found. Although Defendant Matovich's affidavit does include the conclusion made by a Cabell County Sheriff's Deputy that drug activity was occurring at Plaintiff's residence, such a conclusion was supported by additional facts. Even excluding this alleged false or improper conclusion that "drug activity" was occurring, Defendant Matovich's affidavit contains sufficient facts and circumstances to warrant a reasonable prudence person in believing that contraband or evidence of a crime would be found at Plaintiff's residence. Specifically, a

11

Cabell County Sheriff's Deputy observed "lots of foot traffic at the residence," Officers received at least three calls to the tip line, and an individual (Courtney Bohnke) that was stopped a few blocks after leaving Plaintiff's residence was in the possession of crack cocaine allegedly obtained from Plaintiff's residence. Accordingly, the "shield of immunity" conferred by a search warrant was not lost in the instant case because the warrant was not "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." To the extent Defendants seek summary judgment as to Plaintiff's claim of an unlawful search of his residence, the undersigned respectfully recommends that Defendants' Motion be granted.

**(b)    False Arrest/False Imprisonment/Malicious Prosecution:**

A plaintiff's claim for false arrest or false imprisonment ceases once plaintiff is detained pursuant to legal process, and at this point, plaintiff's claim becomes a claim of malicious prosecution. See Wallace v. Kato, 549 U.S. 384, 388-89, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - - when, for example, he is bound over by a magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.")(internal citations omitted). In the context of a claim for malicious prosecution, the Fourth Circuit recognizes that an appropriate Section 1983 claim is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir.

12

2000), cert. denied, 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001)(citing Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996)); also see Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)(finding that a Section 1983 malicious prosecution claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort."). To state a Section 1983 claim for a seizure in violation of the Fourth Amendment, the defendant must have "seized plaintiff pursuant to legal process that was not supported by probable cause and the criminal proceeding [must] have terminated in plaintiff's favor." Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005)(citing Brooks, 85 F.3d at 183-85)). A decision by an independent intermediary, such as a neutral magistrate or a grand jury, as to the existence of probable cause has a significant impact on the question as to whether an officer was objectively reasonable in his belief that probable cause existed. See Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012); Torchinsky v. Siwinski, 942 F.2d 257, 261-62 (4th Cir. 1991). This protective effect, however, does not shield officers who have "deliberately supplied misleading information that influenced the decision." Durham, 690 F.3d at 189; Evans, 703 F.3d at 647 – 48 (4th Cir. 2012); also see Miller, 475 F.3d at 630(When police officers arrest an individual pursuant to an arrest warrant, the officers are liable under the Fourth Amendment if the officers "intentionally lie in warrant affidavits, or recklessly include or exclude material information known to them."); Washington v. Wilmore, 407 F.3d 274, 283(4th Cir. 2005)(A grand jury's decision to indict does not "shield a police officer who deliberately supplied misleading information that influenced the decision."); White v. Frank, 855 F.2d 956, 961-62 (2nd Cir. 1988)("[T]hough an indictment by a grand jury is generally considered prima facie evidence of probable cause in a subsequent civil action for malicious prosecution, this

13

presumption may be rebutted by proof that the defendant misrepresented, withheld, or falsified evidence."). Although "[a]n investigation need not be perfect, . . . an officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause." Miller, 475 F.3d at 630-31(Reckless disregard can be established by evidence that the officer "acted with a high degree of awareness of [a statement's] probable falsity" or he "failed to inform the judicial officer of facts [he] knew would negate probable cause."); also see United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990)("An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation," but a facially sufficient affidavit is still subject to challenge if it includes "omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate.")(emphasis in original). Allegations, however, of "negligence or innocent mistake" by a police officer will not provide a basis for a constitutional violation. Miller, 475 F.3d at 627-28. An officer, therefore, may be liable if his actions results in the seizure of an individual without probable cause when the officer deliberately or recklessly supplies false or misleading information, or omits material information that the officer knows would negate probable cause, in order to obtain an indictment. To the extent Defendants raise a qualified immunity defense, there is no question that these rights were clearly established and that no reasonable officer could have believed that it was permissible to deliberately or reckless create false or misleading evidence to present to a grand jury to effect a person's indictment and arrest. See Miller, 475 F.3d at 631-32. Accordingly, the undersigned will consider whether Plaintiff has established a violation of this clearly established right.

In his Complaint, Plaintiff acknowledges he was arrested following the search of his

residence on December 29, 2016, pursuant to an outstanding arrest warrant for a traffic violation. (Document No. 2.) Plaintiff, however, alleges that Defendants prepared Criminal Complaints charging him with drug offenses. (Id.) Plaintiff states that the above Criminal Complaints included false or misleading statements by Defendants. (Id.) Plaintiff claims that these false and misleading statements resulted in the Magistrate finding probable cause and Plaintiff's "illegal incarcerated for 11 days." (Id.) Plaintiff alleges that the Criminal Complaints were dismissed by Magistrate Black on January 6, 2017. (Id.) In his Amended Complaint, Plaintiff alleges that Defendants engaged in malicious prosecution when Defendants provided the same false testimony to the Grand Jury resulting in Plaintiff's indictment and subsequent detention. (Document No. 15.)

In their Motion, Defendants argue that Plaintiff was arrested on December 29, 2016, based upon a facially valid, unexecuted, arrest warrant for driving under a suspended license. (Document No. 55, p. 7.) Defendants, therefore, contend that they "did not have to second guess the validity of the Plaintiff's arrest warrant." (Id.) Defendants assert that "[u]nder no circumstances could an officer's arrest of a suspect pursuant to a warrant be considered 'plainly incompetent" or in 'knowing violation of the law.'" (Id.) Therefore, Defendants conclude they are entitled to qualified immunity on the allegation of an improper seizure because Plaintiff was arrested pursuant to a valid arrest warrant. (Id., p. 8.)

In Response, Plaintiff continues to argue that he was falsely arrested and charged with various drug offense because no drugs were found on Plaintiff's person or in Plaintiff's residence. (Document No. 75.) Plaintiff states that Defendants filed a false report stating that drugs were found in his residence, when in facts the drugs were found on the person who was an

15

occupant of his residence (Lisa Washburn). (<u>Id.</u>) Plaintiff argues that he was improperly arrested based upon Ms. Washburn's possession of drugs for her own person use. (<u>Id.</u>) Plaintiff argues that "Defendants Blackburn and Matovich had absolutely no probable cause to believe that Plaintiff was in possession of any drugs and they cannot provide this Court with any statement from any witness which states that Plaintiff was in possession of any drugs." (<u>Id.</u>, p. 5.) Plaintiff alleges that "Defendants knew Plaintiff had violated no laws and fabricated evidence to effectuate Plaintiff's arrest" and "all charges filed by these Defendants were dismissed." (<u>Id.</u>)

In Reply, Defendants argue that Plaintiff's allegation that "the drugs found on Lisa Washburn were hers for personal use" does not establish that Defendants fabricated evidence. (Document No. 76.) Defendants "emphasize that Lisa Washburn was found located inside the dwelling maintained by Plaintiff." (<u>Id.</u>) Defendants note that "Plaintiff was charged, in part, with maintaining a dwelling for the purpose of controlled substances pursuant to West Virginia Code 60A-4-402. (<u>Id.</u>) Defendants note that Plaintiff confirms in his Response that "Lisa Washburn was in possession of drugs for personal use at his residence." (<u>Id.</u> and Document No. 42-1.) Thus, Defendants conclude that they are entitled to qualified immunity related to Plaintiff's seizure. Although Defendants acknowledge that Plaintiff's above drug charge was dismissed, Defendants explain that the "charges were dismissed pursuant to a plea agreement wherein Plaintiff pled 'no contest' to being a felon in possession of a firearm as part and parcel to a plea agreement for underlying Criminal Case of 17-F-016 and 15-F-236." (<u>Id.</u>) As an Exhibit, Defendants attach a copy of transcripts from Plaintiff's plea hearing where he was sentenced to time served. (Document No. 76-3.)

Although it is undisputed that Plaintiff was arrested on an arrest warrant on December

29, 2016 for driving suspended, Plaintiff states he was detained for 11 days based upon the Criminal Complaints. The record reveals that two Criminal Complaints were prepared by Defendant Blackburn charging Plaintiff with one misdemeanor offense (Maintaining a Dwelling for the Purpose of Controlled Substances in violation of W.Va. Code 60A-4-402) and one felony offense (Delivery of a Controlled Substance in violation of W.Va. Code § 60A-4-401(a)).[2] (Document Nos. 2-1 and 2-2.) The record indicates that the Criminal Complaints were presented to the Magistrate on December 30, 2016, who determine probable cause for the "warrantless arrest."[3] (Id.) Plaintiff states he was held in jail in lieu of a $150,000 cash bond. The record further indicates that Plaintiff plead guilty to the charges underlying his arrest warrant (driving suspended) on December 30, 2016, and that the charges underlying the Criminal Complaints were dismissed[4] on January 6, 2017. (Document No. 49-1, p. 1.) It appears the Criminal

_____

[2] The undisputed record further reveals that Defendant Matovich prepared two Criminal Complaints charging Plaintiff with "Intimidation and retaliation against a public officer" in violation of W. Va Code § 61-5-27(c) and Obstructing an Officer in violation of W.Va. Code W 61-5-17(a). (Document No. 52-2.) There is no allegation by Plaintiff that the above charges were improper.

[3] A warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense, and the officer's decision that probable cause is present is reviewed under a totality of the circumstances. *See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).*

[4] The record reveals that the State filed a Motion to Dismiss concerning the charges contained in the Criminal Complaints. (Document No. 42-6.) In support of the Motion, the State requested dismissal of charges "for further investigation." (*Id.*) The State further noted that Plaintiff had "an open warrant from Circuit Court (15-F-236) that was executed on this day." (*Id.*) The record reveals Plaintiff's indictment in Case No. 15-F-236 was superseded by an indictment in Case No. 17-F-016. (Document No. 76-3, pp. 3 - 4.) Based upon a plea agreement, charges contained in the above cases were dismissed in exchange for Plaintiff plea of guilty to a felony offense of Attempt to Commit a Felony with the predicate felony being a felon in possession of a firearm. (*Id.*)

17

Complaints were dismissed and Plaintiff was later indicted on the same charges.[5] The indicted charges were later dismissed as part of a plea agreement. (Document No. 76-3.) Specifically, Plaintiff's plead guilty to Attempting to Commit a Felony in exchange for dismissal of the drug charges and sentencing to time served.[6] (Id.)

To the extent Plaintiff is alleging that he was unlawfully arrested on December 29, 2016, the undersigned finds that Defendants are entitled to summary judgment. Viewing the facts in a light most favorable to Plaintiff, the undersigned cannot find that such establishes that Plaintiff's arrest on the active arrest warrant resulted in a deprivation of an actual constitutional right. The undisputed evidence reveals that Plaintiff was arrested pursuant to an arrest warrant for driving suspended. There is no allegation or indication that the arrest warrant for driving suspended was invalid. As stated above, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." Messerschmidt, 565 U.S. at 546, 132 S.Ct. at 1245. Accordingly, the undersigned finds that Defendants are entitled to qualified immunity as to Plaintiff's claim that he was falsely arrested on December 29, 2016.

Next, the undersigned will consider Plaintiff's malicious prosecution claim addressed under the Fourth Amendment's prohibition against unreasonable seizure. To state a malicious prosecution claim, Plaintiff must allege that Defendants (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings

---

[5] Although Plaintiff alleges he was incarcerated for 11 days, Plaintiff alleges he was arrested on December 29, 2016 and the Criminal Complaints were dismissed on January 6, 2017. In the State's Motion to Dismiss the Criminal Complaints, it was noted that Plaintiff had "an open warrant from Circuit Court (15-F-236) that was executed on this day." (Document No. 42-6.)

[6] It appears undisputed that Plaintiff received credit towards his sentence for attempting to commit a felony for all time he alleges he was illegally detained concerning the drug charges.

terminated in Plaintiff's favor. Lambert, 223 F.3d at 262 (citing Brooks, 85 F.3d at 183). Plaintiff appears to assert malicious prosecution claims based upon his seizure due to the filing of the Criminal Complaints and his subsequent Indictment. Specifically, Plaintiff alleges that Defendants prepared Criminal Complaints containing "false" statements, which caused the Magistrate to find probable cause for his arrest and subsequent detention. Plaintiff concludes the Criminal Complaints contained "false" information because Defendants stated that drugs were found in Plaintiff's residence. Plaintiff argues this was a "false" statement because the drugs were found on the person of Lisa Washburn, who was an occupant of Plaintiff's residence. In support of the Criminal Complaint charging Plaintiff with Maintaining a Dwelling for the Purpose of Controlled Substances in violation of W.Va. Code 60A-4-402, Defendant Blackburn set forth the following facts:

> On 12/29/2016 members of the Huntington Police Department executed a search warrant at the defendant's residence located at 222 1st Street Altizer Huntington WV. Inside the residence officers found 2 sets of digital scales, needles, glass pipes, packaging material, ledger, and a bag containing tan chunks that field tested positive for cocaine. The residence belongs to the Defendant.

(Document No. 2-1.) In support of the Criminal Complaint charging Plaintiff with Delivery/Manufacturing of a Controlled Substance (W.Va. Code § 60A-4-401(a)), Defendant Blackburn set forth the following facts:

> On 12/29/2016 members of the Huntington Police Department executed a search warrant in the defendant's residence located at 222 1st Street Altizer Huntington WV. Inside the residence officers found 2 sets of digital scales, ledgers, packaging material, and a bag containing tan chunks that field test positive for cocaine.

(Document Nos. 2-2.) Finally, Plaintiff alleges that he was indicted because Defendants presented to the grand jury the same "false" statement that drugs were found inside his residence.

19

Viewing the facts in a light most favorable to Plaintiff, the undersigned cannot find that Defendants caused Plaintiff's seizure pursuant to legal process unsupported by probable cause. It is undisputed that Plaintiff was charged with Maintaining a Dwelling for the Purpose of Controlled Substances in violation of W.Va. Code 60A-4-402 and Manufacturing, Delivering or Possessing a Controlled Substance in violation of W.Va. Code 60A-4-401(a). West Virginia Code § 60A-4-402 provides that it is unlawful for any person to "[k]nowingly to keep or maintain any . . . dwelling . . ., which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for keeping or selling them in violation of this chapter." West Virginia Code § 60A-4-401 provides that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substances." It is further undisputed that inside Plaintiff's residence, Defendants found the following items: two sets of digital scales, needles, glass pipes, packaging material, and ledger. First, the undisputed evidence does not support Plaintiff's conclusion that Defendants made "false" statements. The undisputed evidence reveals that Defendants stated that drugs were found inside Plaintiff's residence. Although Plaintiff disputes this representation of the facts, Plaintiff does not dispute that drugs were found on Lisa Washburn and that she was an occupant of his residence at the time the drugs were discovered. Therefore, Plaintiff's claim is actually based upon Defendants' omission of the fact that the drugs were found on the person of an occupant of his residence.

Accordingly, Plaintiff must show that (1) the officer deliberately or recklessly omitted the information at issue, and (2) the inclusion of that information would have defeated probable cause.) See Colkley, 899 F.2d 297, 300-01. Thus, Plaintiff must demonstrate that the omission

20

was material such that it was necessary to the finding of probable cause. Id.(The omission "must be such that its inclusion in the affidavit would defeat probable cause."). To determine materiality, the Court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not" probable cause existed. See Humbert v. Mayor and City Council of Baltimore City, 866 F.3d 546, * 556 (4th Cir. 2017); also see Osborne v. Georgiades, 679 Fed.Appx. 234 (Feb. 8, 2017)(citing Miller, 475 F.3d at 628)("The court must insert the facts recklessly omitted and determine whether or not the 'correct' warrant affidavit would establish probable cause. If the 'correct' warrant affidavit establishes probable cause, the omissions do not amount to a constitution violation."). In the instant case, the undisputed facts do not support a conclusion that Defendants intentionally or recklessly omitted material information that would have negate probable cause. Inserting the fact omitted (that drugs were found on the person of an occupant of Plaintiff's residence and the occupant stated drugs were for personal use) would not have negated probable cause. Taking the omitted fact in conjunction with Defendants' statement that two sets of digital scales, needles, glass pipes, packaging material, and a ledger were found during the search of Plaintiff's residence, sufficient facts existed establishing probable cause for Plaintiff's seizure pursuant to legal process for Maintaining a Dwelling for the Purpose of Controlled Substances in violation of W.Va. Code 60A-4-402 and Manufacturing, Delivering, or Possessing a Control Substance in violation of W.Va. Code 60A-4-401(a). See Brooks, 85 F.3d at 184(where untainted facts support an officer's assessment of probable cause, seizure "rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate . . . is reasonable" and "breaks the causal chain between the application for the warrant and the improvident arrest."); also see

Smith v. Munday, 848 F.3d 248, 253(4th Cir. 2017)("While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict."); United States v. Joy, 336 Fed.Appx. 337 (4th Cir. 2009)(citing Taylor v. Waters, 81 F.3d 429 (4th Cir. 1996)("Even 'seemingly innocent activity' can provide the basis for probable cause when considered in context of the surrounding circumstances."); United States v. Brooks, 589 F.Supp.2d 618, 630-31(E.D.Va. Nov. 25, 2008)("The fact that no drugs were found in Defendant's vehicle is a factor for the Court to consider, but it does not preclude a finding of probable cause . . .."). Since no facts or inferences can be drawn from the circumstances supporting Plaintiff's claim that Defendants seized Plaintiff without probable cause, Plaintiff cannot establish the second element of his malicious prosecution claim under the Fourth Amendment. Therefore, Defendants are entitled to summary judgment concerning Plaintiff's malicious prosecution claim.

2.    **State Law Claims:**

In their Motion, Defendants argue that Plaintiff has asserted State law claims of malicious prosecution, abuse of process, and retaliation. (Document Nos. 49 and 55.) Defendants argue that because they are entitled to qualified immunity and summary judgment as to Plaintiff's federal claims, this Court has neither subject matter jurisdiction nor supplemental jurisdiction over the remaining state law claims. (Id.) Plaintiff failed to address the foregoing issue in his Response. (Document No. 75.)

The District Court has supplemental jurisdiction over State law claims "that are so related to claims in the action within [the District Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[T]he federal claim must have sufficient substance to confer subject matter jurisdiction

on the court. The state and federal claims must derive from a common nucleus of operative facts." United Mineworkers of America v. Gibbs, 383 U.S. 718, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)(Citation omitted.) The Court, however, may decline to exercise supplemental jurisdiction over a claim if one of the following factors exist:

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims which the district court has original jurisdiction,

> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). If one of the four factors is present, the determination of whether to decline the exercise of supplemental jurisdiction is discretionary and must be guided by "the values of judicial economy, convenience, fairness, and comity." City of Chicago v. International College of Surgeons, 522 U.S. 156, 173, 118 S.Ct. 523, 534, 139 L.Ed.2d 525 (1997); also see Price v. Brody Mining, LLC, 2010 WL 2486343 (June 15, 2010)(J. Goodwin)(remanding state law claims to state court following the dismissal of plaintiff's federal claims). In Cohill, the Court recognized that a balancing of the above factors indicates that a case properly belongs in state court where "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988)("[W]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have been dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") To the extent Plaintiff is

23

asserting State law claims,[7] the undersigned respectfully recommends that District Court decline to exercise supplemental jurisdiction.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants Blackburn and Matovich's Motion for Summary Judgment (Document No. 49) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties,

---

[7] In his Amended Complaint, Plaintiff states he is claiming retaliation, "malicious prosecution and abuse of process under State law. (Document No. 15.)

District Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 16, 2018.

Omar J. Aboulhosn
United States Magistrate Judge